**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 97-60733
Summary Calendar
_____


ARLENE C COKER; JAMIE E COKER,

                              Petitioners,

versus

UNITED STATES RAILROAD RETIREMENT BOARD,

                              Respondent.

_____

Appeal from the United States Railroad
Retirement Board
(MA-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)
_____

May 19, 1998

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

     Mr. Jamie Coker and Ms. Arlene Coker ("the Cokers") appeal pro se the decisions of the United States Railroad Retirement Board ("the Board") that each was not entitled to waiver of the Board's recovery of alleged erroneous payments made in their retirement annuities.  *See* 45 U.S.C. § 231i(c).  We affirm.

     Mr. Coker worked in the railroad industry for twenty three and

_____

          [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

one-half years and made contributions to his retirement fund pursuant to the Railroad Retirement Act of 1937 ("1937 Act"). *See* 45 U.S.C. § 228 *et seq.* (amended in 1974). Congress fundamentally restructured the railroad retirement system with the enactment of the Railroad Retirement Act of 1974 ("the Act" or "1974 Act"). *See Coker v. Gielow*, 806 F.2d 689, 694 (6th Cir. 1986) (discussing the structure of the 1974 Act and Mr. Coker's earlier contentions regarding the Act). This litigation stems from the Board's determination that Mr. Coker's railroad retirement annuity had been overpaid $367.99 and that Mrs. Coker's annuity overpaid $7,010.28.[1] The Board determined that the overpayment to Mr. Coker resulted from a clerical error, while the overpayment to Mrs. Coker resulted from her failure to notify the Board that she was receiving social security benefits, which must be deducted from her railroad annuity under the 1974 Act. *See* 45 U.S.C. § 231c(i)(1). The Board further determined that the Cokers' failed to prove that the recovery of the overpayments was either against equity or good conscience or contrary to the purpose of the Act, *see* 45 U.S.C. § 231i(c),

---

[1] In 1992, Mrs. Coker applied for and was awarded a spouse annuity under the 1974 Act, which provides for monthly annuities for the spouses of retired railroad employees. *See* 45 U.S.C. § 231a(c)(1); 45 U.S.C. § 231c(a)(1) & (2). The Act provides that "[t]he annuity of a spouse . . . shall be in an amount equal to the amount . . . [of] the husband's insurance benefit to which such spouse or divorced wife would have been entitled under the Social Security Act if such individual's service as an employee after December 31, 1936, had been included in the term 'employment' as defined in that Act." 45 U.S.C. § 231c(a)(1) (internal citation omitted).

because the Cokers' refused to provide the Board or its hearing examiners with complete financial information. The Cokers' appeal the decisions of the Board.

The Railroad Retirement Act of 1974, 45 U.S.C. § 231g, incorporates the judicial review provision of the Railroad Unemployment Insurance Act which provides that "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." 45 U.S.C. § 355(f). Our well-established standard of review requires that we affirm the decision of the Board "if its finding of fact is supported by substantial evidence and its decision is not based on an error of law." *Kurka v. United States R.R. Retirement Bd.*, 615 F.2d 246, 249-50 (5th Cir. 1980). The Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed. 126 (1938); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Mr. and Mrs. Coker first argue that they should not be made to repay the Board because its decision was based on an error of law, and consequently, that the Board has actually underpaid, rather than overpaid, their annuities. The Cokers' claim that the Board has incorrectly applied 45 U.S.C. § 231b(f)(2) ("the grandfather clause") in determining Mr. Coker's annuity, and that he is

3

entitled to a full railroad retirement annuity under the 1937 Act with cost of living adjustments ("COLAs") added for the years since 1974, and without any reduction for social security benefits.[2] As the Board notes in its brief, Mr. Coker has litigated his interpretation of the grandfather clause at great length both in the federal courts and before the Board. *See, e.g., Coker v. Gielow*, 806 F.2d 689, 694 (6th Cir. 1986) (*Coker* I) (rejecting Mr. Coker's claim that he is entitled to payment under the 1937 Act with accumulated cost of living increases and without reduction for social security); *see also Coker v. United States R.R. Retirement Bd.*, 871 F.2d 1149, 1989 WL 33666 (D.C. Cir. 1989) (*Coker* II) (unpublished opinion) (rejecting same claim); *Coker v. Simon*, No. 89-2791-G (W.D. Tenn. 1991) (*Coker* III) (unpublished opinion) (Freedom of Information Act claim). We agree with the D.C. Circuit

---

[2]     The grandfather provision states, in pertinent part, that

> If . . . the annuity (before any reduction due to such individual's entitlement to a monthly insurance benefit under the Social Security Act) . . . is less than the total amount which would have been payable to such individual and his spouse for such month, on the basis of the individual's compensation and years of service, under the provisions of the Railroad Retirement Act of 1937 as in effect on December 31, 1974, . . . the annuity of such individual and the annuity of such spouse, if any, shall be increased . . . proportionately so as to equal such total amount.

45 U.S.C. § 231b(f)(2) (internal citations omitted).

4

and the Board that Mr. Coker is barred from relitigating his interpretation of the grandfather clause. *See Coker* II, 1989 WL 33666, at *1 ("Coker is precluded from relitigating his interpretation of sections 231b(f)(2) and 231b(m).").

In addition, we must briefly address Mrs. Coker's claim that her annuity has been incorrectly calculated because it is based on the erroneous calculation of Mr. Coker's annuity. *See supra* note 1. Assuming *arguendo* that Mrs. Coker's claim is not barred by principles of issue preclusion, *cf.* WRIGHT, MILLER, & COOPER, 18 FEDERAL PRACTICE & PROCEDURE § 4416-26 (1981), we agree with the Sixth Circuit's rejection of the Cokers' interpretation of the grandfather clause:

> Claimant argues for an interpretation of the "grandfather clause" which would allow for payment of not only the 1937 Act amount of $309.00 but accumulated cost of living increases on this amount since 1974 plus his social security benefits, for a total monthly benefit in excess of $900.00. He contends that since this combined sum is greater than his benefit amount under the new Act, he is entitled to the larger amount under this clause.
>
> With regard to the argument for accumulation of cost of living increments, the clause specifically provides that the computation be made under "the provisions of the Railroad Retirement Act of 1937 *as in effect on December 31, 1974.*" 45 U.S.C. § 231b(f)(2) (emphasis added). The statutory language clearly restricts the computation to that amount payable as of December 31, 1974, thereby barring allowance for cost of living increases declared subsequent to that date. Therefore, we find this argument without support.

*Coker* I, 806 F.2d at 694. We agree that the grandfather clause requires the Board to compare the claimant's annuity under the tiering system of the 1974 Act with the amount that the claimant

5

would have been entitled to under the 1937 Act as of December 31, 1974, without the accumulated COLAs since that time. As the Sixth Circuit correctly concluded, Mr. Coker's annuity under the 1937 Act (without COLA increases) was less than his applicable annuity rate under the provisions of the 1974 Act; therefore, the Board correctly determined Mr. Coker's annuity under the 1974 Act. *See Coker*, 806 F.2d at 694. Thus, we reject Mrs. Coker's argument that the Board incorrectly interpreted the grandfather clause in calculating her and her husband's annuities.

We similarly reject Mrs. Coker's additional argument that the Board is not authorized to deduct her social security benefits from her spousal railroad annuity. The 1974 Act specifically states that "[t]he annuity of any spouse or divorced wife . . . shall . . . be reduced, but not below zero, by the amount of any insurance benefit . . . payable to such spouse or divorced wife for that month under Title II of the Social Security Act." 45 U.S.C. § 231c(i)(1). An identical provision requires that the Board offset Mr. Coker's annuity by the amount of his social security benefits. *See* 45 U.S.C. § 231b(m) ("The annuity of any individual . . . shall . . . be reduced, but not below zero, by the amount of any monthly benefit . . . payable to that individual for that month under Title II of the Social Security Act."). The plain language of the Act belies the Cokers' contention that social security cannot be deducted from their annuities.

6

The next issue is whether the Cokers must repay the Board the overpayments they received. While the Railroad Retirement Act authorizes the Board to recover overpaid benefits, *see* 45 U.S.C. 231i(a), the Act limits the Board's ability to recover such overpayments as follows:

> There shall be no recovery in any case in which more than the correct amount of annuities or other benefits has been paid under this subchapter to an individual or payment has been made to an individual not entitled thereto who, in the judgment of the Board, is without fault when, in the judgment of the Board, recovery would be contrary to the purpose of this subchapter and the Railroad Unemployment Insurance Act or would be against equity or good conscience.

45 U.S.C. § 231i(c). Thus, in order to waive repayment, the Board must find that: (1) the annuitant was without fault, and (2) recovery is either (a) against the purposes of the Act or (b) contrary to equity or good conscience. *See Peterson v. United States R.R. Retirement Bd.*, 780 F.2d 1361, 1363 (8th Cir. 1985) (explaining that waiver of repayment requires satisfaction of "two-part" test). Recovery is against the purpose of the Act if recovery deprives the beneficiary of the necessities of life. *See* 20 C.F.R. § 255.12(d). Recovery is against equity and good conscience where the beneficiary changed his or her position in reliance on the overpayments to such an extent that recovery would impose a severe hardship. *See* 20 C.F.R. § 255.12(e).

Here, the Board found that Mr. Coker satisfied the first prong and was not at fault because the overpayment of $367.99 was the

7

result of clerical error; the Board did not address the issue of Mrs. Coker's fault for the $7,010.28 overpayment.[3] The Board then concluded that both Mr. and Mrs. Coker failed to satisfy the second prong because they could not demonstrate that recovery was contrary to the purpose of the Act or against equity or good conscience because they refused to provide complete financial information. Our function on review is to determine whether the Board's determination is supported by substantial evidence. *See Peterson,* 780 F.2d at 1364-65. We can set aside the decision only if we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of the evidence opposed to the [agency's] view." *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L.Ed. 456 (1951)).

In the instant case, Mr. and Mrs. Coker provided minimal evidence to show hardship. They averred that they lived mostly on their railroad and social security benefits, and without disclosing the amount, they acknowledged that they had income from "a few C.D.s." While Mr. Coker provided a rough listing of monthly expenses and a partial tax return for 1993, he refused to provide

---

[3] We note that the hearings officer below found Mrs. Coker at fault for failing to disclose that she had begun to receive social security payments. The Board did not reach this issue because it found that Mrs. Coker failed to satisfy the second hardship prong of the test.

8

any additional information regarding income from other years or other sources, family assets, debts, or more detailed expenses. When the Board requested that the Cokers complete Board Form G-423, a form by which annuitants report monthly income from all sources, monthly expenses by category, a list of indebtedness, outstanding obligations, and a schedule of assets, the Cokers refused to comply.[4] Mr. Coker stated, "I have not submitted, nor do I intend to submit a financial statement in order to have the $367.99 waived." Mrs. Coker stated, "I purposefully decline to submit Form G-423 based principally on my belief that the Board cannot legally offset these funds."

Although courts have reversed the Board's finding of no hardship where the record presented complete and compelling indication of hardship, the Cokers refused to provide such evidence to the Board. *Cf. Cooper v. United States R.R. Retirement Board,* 13 F.3d 421, 1993 WL 515541, *1 (D.C. Cir. 1993) (unpublished opinion) (reversing determination of the Board and concluding that repayment would create hardship, based *inter alia* on claimant's $25,000 outstanding mortgage, his daughter's family of six moving

---

[4] The record shows that the Board's hearing officer wrote Mrs. Coker on November 6, 1995, advising of the need for financial information. She wrote Mrs. Coker again on December 6, 1995, and Mr. Coker on December 18, 1995, requesting financial information. The hearings officer requested this information because "[d]eterminations of credibility are for the hearing officer." *Peppers v. Railroad Retirement Bd.*, 728 F.2d 404, 406 (7th Cir. 1984).

in to help share expenses, his small savings of $2,900 being earmarked as a burial fund for his wife, and his serious health problems not being fully covered by insurance); *Peterson,* 780 F.2d at 1364-65 (considering the plaintiff's monthly income, his wife's income, the family's monthly expenditures, and value of the plaintiff's home in determining that substantial evidence did not support the Board's finding of no hardship); *Burns v. United States R.R. Retirement Bd.,* 701 F.2d 193, 203 (D.C. Cir. 1983) (remanding because the Board had not made a determination of hardship, and noting that the age of the petitioner, her monthly living expenses, and that she lived on a fixed income were "compelling").

In contrast, on appeal, the Cokers state only that "[w]ithout question, repayment of $7,010.28 by someone of Petitioner Arlene C. Coker's age, experience, educational background, and physical abilities, or lack thereof, would create a severe and disabling hardship to which this Court can take judicial notice." The Cokers, however, point to no evidence in the record nor information before the Board that would support such a conclusion. The Cokers also claim that they thought that submission of financial information to demonstrate hardship "might be viewed as a waiver of [their] legal issue." Again, the Cokers' provide no explanation for this claim; we note that a licensed attorney accompanied the Cokers to the meeting with the hearing officer and subsequently wrote a letter to the hearing officer on the Cokers' behalf stating

10

that the Board "should be receiving the disclosure statement directly from the Cokers in the very near future." Unfortunately, the Cokers chose not to disclose their financial information.

The Cokers' minimal evidence of hardship combined with their overt intransigence in the face of repeated requests for more complete financial information precludes us from finding that the Board's conclusion was not supported by substantial evidence. Viewing the record in its entirety, we conclude that the decision of the Board is based upon "such relevant evidence as a reasonable mind might accept as adequate to support [the Board's] conclusion." *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed. 126 (1938)). Accordingly, the decision of the Board is hereby AFFIRMED.